```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
STEVEN CARTER,                                             :
                                                           :
                              Petitioner,                  :
                                                           :    16-CV-7589 (VSB) (SDA)
            -against-                                      :
                                                           :    OPINION & ORDER
SUPERINTENDENT DONALD UHLER,                               :
                                                           :
                              Respondent.                  :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Barbara Zolot
Center for Appellate Litigation
New York, NY
*Counsel for Petitioner*

Susan Holly Gliner
New York County District Attorney's Office
New York, NY
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

        Currently pending before me are the objections of Petitioner Steven Carter ("Carter") to the Report and Recommendation of Magistrate Judge Stewart D. Aaron (Doc. 23 ("Report")), recommending that I deny Carter's petition for a writ of habeas corpus, (Doc. 6 ("Petition").)[1] I have reviewed the Report and Petitioner's objections. Because I find the Report to be thorough and accurate, I overrule Carter's objections, ADOPT the Report and Recommendation, and DISMISS the Petition.

---

[1] After Carter filed his initial petition, he filed an amended petition on September 30, 2016, which is the document I refer to as the "Petition."

I. **BACKGROUND AND PROCEDURAL HISTORY**[2]

On November 10, 1986, a young woman ("Victim") was found dead in St. Nicholas Park. (Report 2.) An autopsy concluded that the Victim was killed by manual strangulation. (*Id.*) Medical examiners took fingernail clippings from the Victim's fingers and swabbed areas of her body for physical evidence. (*Id.*) The Victim's inner thigh and leggings were swabbed and semen was collected; however, the technology available at the time did not allow anything more to be done with this evidence. (*Id.*)

In April 2010 and February 2011, the evidence from the autopsy was tested for deoxyribonucleic acid ("DNA"), and it was found that DNA under the fingernails and in the semen taken from the Victim's leggings matched a male DNA profile. (*Id.*) This profile was run through a state DNA database, where it was found to match Carter's DNA profile. (*Id.* 6.) Detectives interviewed Carter on June 15, 2011, who at the time was already incarcerated on unrelated charges. (*Id.* 3.) Carter denied killing the Victim, but "he admitted that he had taken prostitutes into St. Nicholas Park in the past, and that some of his sexual activities would get 'out of hand.'" (*Id.*) Carter was subsequently indicted for causing the Victim's death and charged with murder and felony murder. (*Id.*)

On February 2, 2012, Carter moved to dismiss the indictment on various grounds including, relevantly, that prosecutors had violated his due process rights by (1) delaying for 25 years in seeking his indictment, and (2) by not producing potentially exculpatory materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), until shortly before trial. The *Brady* material in question was a two-page handwritten statement from the Victim's sister, dated May

---

[2] The facts in this section are taken from the Report, which contains a more complete factual account and procedural history. Carter does not object to the Report's statement of factual background or procedural history.

13, 2011 ("Sister Statement"). In the Sister Statement, the Victim's sister suggested that the Victim's boyfriend, Gary Mullings ("Mullings"), had argued with the Victim on the night of her death and had motive and opportunity to carry out the killing. The sister died in October 2011, which meant that Carter never had a chance to interview her.

Carter's motion to dismiss was denied. The trial court found that the delay was not unreasonable given that Carter was not even a suspect until he was matched in the DNA database, and it reserved a remedy for the alleged *Brady* violation for a later hearing. By agreement of counsel, and with the trial court's consent, it was agreed that parts of the Sister Statement would be read into the record during trial.

Carter also moved prior to trial for the admission of statements that Mullings had made to detectives who had interviewed him in May 2011 (the "Mullings Statement"). As Mullings himself was unavailable to testify at trial,[3] Carter argued that the Mullings Statement should be admitted as an exception to the rules against hearsay evidence. In particular, Carter sought to use the portions of the Mullings Statement stating that: (1) the Victim's sister had returned to the apartment the two women shared "with money and crack which she made from prostitution"; (2) the Victim wanted her sister "to go back out and make more money for crack"; (3) and Mullings had attempted to persuade the Victim "not to go back out" because they "already had enough crack money for the night." The trial court ruled these statements inadmissible under New York's Rape Shield Law. (Report 8 n.12.)

The jury convicted Carter on two counts of murder in the second degree, and Carter was sentenced to 25 years to life on each count, to run consecutively. Carter presented no evidence at trial, but a witness for the prosecution did read the agreed-upon portions of the Sister Statement

---

[3] Defense counsel informed the trial court that Mullings had moved and she could not locate him. (Report 8 n.12.)

to the jury.

On appeal, Carter argued that (1) the exclusion of the Mullings Statement violated his right to mount a defense; (2) the delayed disclosure of the Sister Statement was a *Brady* violation requiring dismissal of the indictment; and (3) the 25-year delay between the Victim's murder and Carter's indictment similarly required dismissal of the indictment. The Appellate Division rejected all of Carter's arguments. *People v. Carter*, 128 A.D.3d 580 (1st Dep't 2015). It found that the Mullings Statement was properly excluded as hearsay testimony from an unavailable witness and that Carter had not made an adequate showing of the Mullings Statement's reliability under *Chambers v. Mississippi*, 410 U.S. 284 (1973). *Id.* at 581. It also held that, although the prosecutors delayed in providing the Sister Statement in response to Carter's "*Brady* request," the "drastic sanction of dismissal" was not warranted, because "the court received the [Sister] [S]tatement in evidence," and because there was "no reasonable possibility that earlier disclosure would have affected the outcome of the case, given the remedy fashioned by the court and the strength of the [prosecution]'s case." *Id.* at 582.[4] Carter sought leave to appeal to the New York Court of Appeals, which was denied.

In his Petition, Carter raises three challenges to his conviction. First, he says that he should have been permitted to introduce evidence that the Victim was a prostitute. Second, he says that the 25-year delay between the Victim's killing and his indictment violated his due process rights. Third, he argues that the delay in producing *Brady* materials prejudiced his defense. All of these arguments were rejected in the Report. Carter timely filed objections. (Doc. 24 ("Objections").)

---

[4] Carter also challenged the sufficiency of the evidence against him, which the Appellate Division both found "unpreserved" for appeal and, "[a]s an alternative holding," unpersuasive "on the merits." 128 A.D.3d at 581.

## II. LEGAL STANDARDS

### A. *Review of Magistrate Judge's Report*

In reviewing a magistrate judge's report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A court reviews de novo the portions of the Report to which timely and specific written objections are made. *Id.*; Fed. R. Civ. P. 72(b)(3). "The objection must be 'specific and clearly aimed at particular findings' in the R[eport]." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). "Otherwise, the court will review the R[eport] strictly for clear error 'when a party makes only conclusory or general objections, or simply reiterates the original arguments.'" *Id.* (quoting *Pena v. Rivera*, No. 05 Civ. 3109, 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006).). Under a clear error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference, [the court] do[es] not question whether a different inference was available or more likely." *United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)).

### B. *Habeas Relief*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Under the first test, "a writ of habeas corpus will issue only if 'a state

court's application of federal law . . . is so erroneous that there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Duhs v. Capra*, 639 F. App'x 691, 694 (2d Cir. 2016) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam)). "Thus, even a showing of 'clear error' will not suffice." *Id.* (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). A state court's factual findings are presumed correct unless the Petitioner comes forward with clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

Furthermore, to qualify as "clearly established Federal law" within the meaning of AEDPA, the law in question must be "'embodied in a Supreme Court holding, framed at the appropriate level of generality.'" *Garlick v. Lee*, 1 F.4th 122, 128–29 (2d Cir. 2021) (quoting *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017). "'A state court decision is contrary to such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Id.*

### III. DISCUSSION

Carter raises three objections, all of which fail. None of the objections meet the proper standard "under AEDPA," i.e., that a habeas petitioner must argue that a state court's determination ran "contrary to clearly established federal law." (Report 13 (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Indeed, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

First, in arguing that the Mullings Statement should have been admitted under *Chambers*,

Carter's Objections fail to make any argument as to how there is clearly established federal law compelling the admission of the Mullings Statement in spite of New York's Rape Shield Law and the rules relating to hearsay evidence. Rather, his Objections explain why he thinks the Mullings Statement would have aided his defense, as well as how he thinks the Report did not "consider the [Mullings] [S]tatement's ample assurances of trustworthiness." (Objections 3–5.) This is insufficient. As the Report correctly stated, Carter needed to identify why his case ran "'contrary to' clearly established federal law." (Report 13 (quoting *Williams*, 529 U.S. at 405–06)). The Objections do not identify any law where a constitutional right compelled the admission of evidence that otherwise would have been excluded under the rules relating to hearsay evidence and anything akin to a rape shield law.

Moreover, even if Carter had advanced a proper argument that *Chambers* compelled admission of the Mullings Statement under clearly established law—which his Objections clearly do not—he fails to offer a cogent explanation of how the Mullings Statement would have helped his case. Carter argues that he needed the Mullings Statement to be admitted in evidence because, by "establishing that" the victim "was a prostitute at the time in question," that would have allowed Carter "to persuasively argue that Mr. Carter's DNA deposit resulted from consensual sex" with the victim "and that someone else killed her." (Objections 7.) However, as the Report notes, "Carter's counsel" did "argue[] to the jury in the opening statement and during summation that the sex between Carter and the Victim was consensual." (Report 15 n.16.) More to the point, Carter offers no rationale explaining why evidence that the victim worked as a prostitute would have made the jury think either (a) that Carter had consensual sex with the victim, or (b) why, whether the sex was consensual has any bearing on the jury's conclusion that Carter killed her. In other words, the two are not mutually exclusive. I am thus bound to accept

the Appellate Division's factual conclusion that the exclusion of the "evidence was harmless" in light of its view of the strength of the case made against Carter.  *See* 128 A.D.3d at 581.

      Carter's second objection is that New York's delay in prosecuting him "was unacceptable and required dismissal under controlling federal constitutional caselaw." (Objections 8).  Again, this is just an ipse dixit assertion; Carter does not identify what controlling federal law renders the delay so unreasonable as to compel dismissal of the indictment.  As the Report correctly states, "pre-indictment delay transgresses due process limits only when there is a showing of actual prejudice to the defendant's right to a fair trial and unjustifiable Government conduct." (Report 16 (quoting *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979) (emphasis removed))).  However, Carter's only argument is that the delay came with "reckless disregard of the probably prejudicial impact on" him.  (Objection 9.)  "The burden of demonstrating actual prejudice rests on" Carter here, "and the proof of prejudice must be definite and not speculative." *United States v. Santiago*, 987 F. Supp. 2d 465, 484 (S.D.N.Y. 2013) (citing *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982)).  Setting aside that Carter does not identify any unjustifiable conduct, Carter's bare assertion of "probably prejudicial impact" is insufficient.  Moreover, the very evidence that Carter claims was impacted by the delay in the prosecution—the testimony of the sister—because of the sister's death between the time of Carter's *Brady* request and the pretrial disclosure of her statement was in fact presented to the jury since her statement was admitted in evidence.  (Report 11.)  In addition, Carter's attorney argued in opening and in summation that the sex between Carter and the Victim was consensual.  (*Id*. 15 n.16.)

      Carter's third objection is that, because prosecutors delayed in disclosing the Sister Statement pursuant to his *Brady* request, the indictment against him should have been dismissed

in its entirety.  (Objections 9.)  Again, Carter fails to argue what clearly established federal law compels this result.  As the Report correctly states, under *Brady* and its progeny, "disclosure prior to trial is not mandated," (Report 17 (quoting *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001)), and Carter does not disagree with the Report's conclusion that he was provided the Sister Statement "in time for its effective use at trial," (*id.* at 18).  These facts are fatal to this objection.

### IV.    Conclusion

For the reasons stated above, Carter's Objections are overruled, the Report is ADOPTED in full, and his Petition is DENIED.  I also will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253, because I agree with the Report's conclusion that "Carter has not 'made a substantial showing of the denial of a constitutional right.'"  (Report 19 (quoting 28 U.S.C. § 2253(c)(2))).  I reject Carter's argument made in a footnote[5] and in conclusory fashion that "for all of the reasons stated [in the Objections], and contrary to the Magistrate-Judge's recommendation, a certificate of appealability should be issued."  (Objections 12 n.3.)

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: August 26, 2022
       New York, New York

Vernon S. Broderick
United States District Judge

---

[5] This argument is not properly briefed, and, in any case, I do not consider arguments in a footnote.  *See Delaney v. Farley*, 623 F. App'x 14, 17 (2d Cir. 2015) ("Generally, we do not consider arguments raised only in footnotes."); *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015) (disregarding arguments raised in a footnote because they were not properly raised).